Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*
*Ideavillage Products Corp. and IDVC, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IDEAVILLAGE PRODUCTS CORP.; and IDVC, LLC<br>*Plaintiffs*<br><br>v.<br><br>LIUZHOU WEIMAO MOBILE ACCESSORY CO., LTD. d/b/a SPORTS BRACERS SHOP d/b/a WWW.COPPERFITONLINESHOP.COM d/b/a WWW.ERYON.LIFE; WWW.COPPERFITONLINESHOP.COM; and WWW.ERYON.LIFE<br>*Defendants* | **20-cv-04997-LTS**<br><br>**PRELIMINARY INJUNCTION ORDER** |

i

# GLOSSARY

# GLOSSARY

| Term | Definition |
|---|---|
| **IPC** | Plaintiff Ideavillage Products Corp. |
| **IDVC** | Plaintiff IDVC, LLC |
| **Plaintiffs or Ideavillage** | IPC and IDVC |
| **Liuzhou** | Defendant Liuzhou Weimao Mobile Accessory Co., Ltd. d/b/a Sports Bracers Shop d/b/a www.copperfitonlineshop.com d/b/a www.eryon.life |
| **Defendants** | Liuzhou, Defendant www.copperfitonlineshop.com, and Defendant www.eryon.life |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiffs |
| **Complaint** | Plaintiffs' Complaint filed on June 30, 2020 (*Docket Entry No. 1*) |
| **Application** | Plaintiffs' *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendants' Websites (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on July 7, 2020 |
| **Lombardo Dec.** | Declaration of LoriAnn Lombardo in Support of Plaintiffs' Application |
| **Drangel Dec.** | Declaration of Jason M. Drangel in Support of Plaintiffs' Application |
| **Copper Fit Registrations** | U.S. Trademark Registration Nos.: 4,676,558 for "COPPER FIT" for goods in Class 25, 4,774,235 for "COPPER FIT" for goods in Class 24, 5,162,178 for "COPPER FIT" for goods in Class 9, 5,788,312 for "COPPER FIT" for goods in Classes 10, 18, 20, and 25, 5,301,755 for "COPPER FIT" for goods in Class 25, 5,397,495 for [COPPER fit logo] for goods in Classes 9 and 10, 5,409,018 for [COPPER fit logo] for goods in Class 25, and 4,901,255 for "COPPER FIT PRO SERIES" |
| **Copper Fit Marks** | The marks covered by the Copper Fit Registrations |
| **Copper Fit Works** | U.S. Copyright Reg. Nos.: PA 1-929-602 covering the Copper Fit Back Pro Commercial, VA 2-091-621 covering the Copper Fit Back Belt Website, and VA 1-948-947 covering the Copper Fit Back Pro Packaging |
| **Copper Fit Products** | Plaintiffs' line of copper-infused compression |

ii

| | |
|---|---|
| | garments, each targeted to different body parts and designed to help relieve muscle and joint soreness and pain, which are marketed and sold under the Copper Fit Marks, including following sub-brands: Copper Fit Knee or Elbow Sleeves, Copper Fit Pro Knee or Elbow Sleeves, Copper Fit Back Pro, and Copper Fit Socks |
| **Ideavillage's Websites** | Plaintiffs' website, www.ideavillage.com, as well as websites specifically devoted to the Copper Fit Products, including www.getcopperfit.com, www.copperfitback.com, www.copperfitpro.com, and www.getenergysocks.com |
| **Counterfeit Products or Infringing Products** | Products bearing or used in connection with the Copper Fit Marks and/or Copper Fit Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Copper Fit Marks and/or Copper Fit Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Copper Fit Marks and/or Copper Fit Works and/or products that are identical or confusingly or substantially similar to the Copper Fit Products |
| **Infringing Domain Name** | www.copperfitonlineshop.com |
| **Defendants' Websites** | Any and all fully-interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' websites located at www.copperfitonlineshop.com and www.eryon.life, along with the domain names associated therewith, including the Infringing Domain Name |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any of Defendants or any of Defendants' Websites (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service** | Any third party providing services in connection with |

| **Providers** | Defendants' Counterfeit Products and and/or Defendants' Websites, including, without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hots, such as Inter Connects Inc., domain name registrars, such as GoDaddy.com, LLC ("GoDaddy"), and domain name registries |
|---|---|
| **TRO** | Judge Laura Taylor Swain's July 8, 2020 temporary restraining order; order restraining Defendants' Websites and Defendants' Assets with the Financial Institutions; order to show cause why a preliminary injunction should not issue; order authorizing bifurcated and alternative service; and order authorizing expedited discovery |

WHERAS, Plaintiffs moved <u>ex parte</u> on July 7, 2020, against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Defendants' Websites and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery (Docket Entry Nos. 17-21);

WHEREAS, the Court granted Plaintiffs' Application on July 8, 2020, and entered the TRO, (Docket Entry No. 23), which ordered Defendants to appear on August 5, 2020 at 2:30 p.m. to show cause why a preliminary injunction should not issue (the "OSC Hearing");

WHEREAS, on July 20, 2020, pursuant to the alternative methods of service authorized by the TRO, Plaintiffs served the Summons, Complaint, TRO and all papers filed in support of the Application on all Defendants (Docket Entry No. 26); and

WHEREAS, Defendants have made no filings in opposition to Plaintiffs' application for a preliminary injunction and, on August 5, 2020 at 2:30 p.m., the OSC Hearing took place telephonically at which Defendants failed to appear.

## **ORDER**

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act. Based on the factual showings made by Plaintiffs, it appears that Defendants have been selling Counterfeit Products in violation of the Lanham Act. Therefore, the Court finds that the Court finds that the requirements for the issuance of a preliminary injunction are met: (1) there is a likelihood that Plaintiffs will be successful on the merits of their claims; (2) there is a likelihood of irreparable harm to Plaintiffs if the injunctive relief does not issue; (3) the balance of the equities favors

Plaintiffs, whose business, goodwill, and reputation associated with the Copper Fit Marks are harmed by the continued sale of Counterfeit Products, whereas there would appear to be little harm to Defendants if the injunctive relief is granted, since Defendants are only ordered to do that which they are required to do under the Lanham Act; and (4) the public interest would be furthered by the granting of injunctive relief, as such would protect Plaintiffs' interest in its trademarks and protect consumers from being deceived by the Counterfeit Products and defrauded by Defendants.

   a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

      i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Copper Fit Marks and/or Copper Fit Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the Copper Fit Marks and/or Copper Fit Works;

      ii. directly or indirectly infringing in any manner Plaintiffs' Copper Fit Marks and Copper Fit Works;

      iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Copper Fit Marks and Copper Fit Works to identify any goods or service not authorized by Plaintiffs;

      iv. using Plaintiffs' Copper Fit Marks and/or Copper Fit Works and/or any other marks that are confusingly similar to the Copper Fit Marks and/or any other

      artwork that is substantially similar to the Copper Fit Works, on or in connection with Defendants' Websites and/or Defendants' manufacture, importation, exportation, advertisement, marketing, promotion, distribution, offering for sale, sale and/or otherwise dealing in Counterfeit Products;

  v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiffs;

  vi. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to the Defendants' Websites or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

  vii. linking, transferring, selling and/or operating Defendants' Websites;

  viii. utilizing the Infringing Domain Name and registering, trafficking in or using any additional domain names that use or incorporate the Copper Fit Marks,

        or any colorable imitation thereof;

    ix. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

    x. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(ix) above.

b) Accordingly, the Third Party Service Providers and Financial Institutions are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

    ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to Defendants' Assets and Defendants' Financial Accounts; and

  iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(ix) and 1(b)(1) through 1(b)(ii) above.

 c) Accordingly, the Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

  i. providing services to Defendants, including, without limitation, those in connection with the continued operation of Defendants' Websites;

  ii. permitting the transfer, sale and/or assignment of Defendants' Websites, including the Infringing Domain Name; and

  iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(ix), 1(b)(i) through 1(b)(ii) and 1(c)(i) through 1(c)(ii) above.

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

 a) Financial Institutions holding Defendants' Financial Accounts are prohibited from making any sale, assignment, or transfer of, or any interference with, any property or assets in their possession or custody in which they know or have reason to believe that Defendants have an interest in, in accordance with N.Y. C.P.L.R. §§ 6210 and 6214(b), pending further order of the Court.

 b) within five (5) days of receipt of service of this Order, any newly discovered Financial Institutions shall locate Defendants' Financial Accounts and shall provide written confirmation to Plaintiffs' counsel: (i) that the Financial Institution holds

  Financial Accounts in which Defendants have an interest, (ii) of the amount held in Defendants' Financial Account, and (iii) of the location of Defendants' Financial Accounts. Such Financial Institutions holding Defendants' Financial Accounts are prohibited from making any sale, assignment, or transfer of, or any interference with, any property or assets in their possession or custody in which they know or have reason to believe that Defendants have an interest in, in accordance with N.Y. C.P.L.R. §§ 6210 and 6214(b), pending further order of the Court.

 c) Plaintiffs must move separately for an Order of Attachment pursuant to N.Y. C.P.L.R. § 6211.

3. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

 a) Plaintiffs may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiffs' counsel.

 b) Plaintiffs may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiffs' counsel.

 c) Within fourteen (14) days after receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiffs' counsel with all documents and records in their possession, custody or control (whether located in

the U.S. or abroad), relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

   i. account numbers;

  ii. current account balances;

 iii. any and all identifying information for Defendants and/or Defendants' Website, including names, addresses and contact information;

 iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

  v. any and all deposits and withdrawals during the previous year from each and every of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

 vi. any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

d) Within fourteen (14) days of receiving actual notice of this Order, the Third Party Service Providers shall provide to Plaintiffs' counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' Websites, including, but not limited to, documents and records relating to:

      i. account details, including, without limitation, identifying information and account numbers for any and all accounts or websites that Defendants have ever had and/or currently maintain with the Third Party Service Providers;

     ii. the identities, location and contact information, including any and all e-mail addresses of Defendants;

    iii. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' Websites, a full accounting of Defendants' sales history and listing history under Defendants' Websites and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' Websites; and

    iv. Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, or any other products bearing the Copper Fit Marks and/or Copper Fit Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute an infringement of the Copper Fit Marks and/or Copper Fit Works.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

   a) delivery of: (i) a PDF copy of this Order; and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this lawsuit accessible through

      ipcounselorslawsuit.com) where Defendants will be able to download a PDF copy of this Order, to Defendants' e-mail addresses, aneffectiveway@outlook.com, service@copperfitonlineshop.com, service@eryon.life, and suncuirongonlinestore@outlook.com.

5. As sufficient cause has been shown, alternative service of this Order by the electronic means ordered herein shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions through the pendency of this action.  Service may be made and shall be deemed effective if it is completed by the following means:

    a) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to EE Omaha Legal Specialist at EEOMALegalSpecialist@paypal.com;

    b) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website where GoDaddy will be able to download a PDF copy of this Order via electronic mail to compliancemgr@godaddy.com; and

    c) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website where Inter Connects Inc. will be able to download a PDF copy of this Order via electronic mail to noc@interconnects.us and ak@interconnects.us.

6. Delivery of a copy of this Order to Defendants shall be deemed to constitute notice of this Order upon Defendants, their agents, servants, and employees pursuant to Fed. R. Civ. P. 65(d)(2)and any act by them in violation of this Order may be considered and prosecuted as in contempt of this Court.

7. The $50,000.00 bond posted by Plaintiffs shall remain with the Court until a final disposition of this case or until this Order is terminated.

8. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

9. Any Defendant that is subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiffs or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this 5th day of August, 2020, at 2:45 p.m.
New York, New York

                                                      /s/ Laura Taylor Swain
                                                    HON. LAURA TAYLOR SWAIN
                                                    UNITED STATES DISTRICT JUDGE