UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

IDEAVILLAGE PRODUCTS CORP. et al.,

               Plaintiffs,

     -against-                     No. 20 CV 4997-LTS

LIUZHOU WEIMAO MOBILE ACCESSORY CO.,
LTD. d/b/a SPORTS BRACERS SHOP d/b/a
WWW.COPPERFITONLINESHOP.COM d/b/a
WWW.ERYON.LIFE, et al.,

               Defendants.
--------------------------------------------------------x

## Memorandum Opinion and Order

     Plaintiffs Ideavillage Products Corp. and IDVC, LLC (hereinafter, collectively "Plaintiffs") move pursuant to Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendants Liuzhou Weimao Mobile Accessory Co., Ltd. ("Liuzhou"), www.copperfitonlineshop.com, and www.eryon.life (hereinafter, collectively, "Defendants") upon claims of Trademark Counterfeiting, Trademark Infringement, Federal Unfair Competition, Federal Copyright Infringement, and Cybersquatting pursuant to 15 U.S.C sections 1114, 1116, 1117, 1051, and 1125, and 17 U.S.C section 101 et seq. (Docket entry no. 1 ("Complaint"); docket entry no. 42.) Defendants have not formally appeared or responded to Plaintiffs' claims or the instant motion. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C sections 1331, 1332, 1338(a-b), 15 U.S.C. sections 1051 et seq. and 1121, and 17 U.S.C. section 101 et seq. The Court has personal jurisdictional over Defendants because Plaintiffs have alleged that Defendants target their business activities in New York through activities including the sale and shipment of the allegedly infringing products to New York

consumers and the operation of their website, through which New York customers can purchase the allegedly infringing products.  (See Complaint, at ¶ 3; see also Coach, Inc. v. McMeins, No. 11-CV-3574, 2012 WL 1071269, at *2 (S.D.N.Y. Mar. 9, 2012), report and recommendation adopted, 2012 WL 1080487 (S.D.N.Y. Mar. 30, 2012) (finding personal jurisdiction over defendant who "transacted business in New York through an interactive website in connection with the matter at issue"); Gucci Am., Inc. v. MyReplicaHandbag.com, No. 07-CV-2438, 2008 WL 512789, at *1 (S.D.N.Y. Feb. 26, 2008 ("Upon the entry of a default judgment, the Court accepts as true all of the facts alleged in the Complaint, except those relating to the amount of damages.").)

The Court has reviewed carefully Plaintiffs' submissions and, for the following reasons, grants in part and denies in part Plaintiffs' unopposed motion for default judgment.

BACKGROUND

Ideavillage is a developer, producer, marketer, and distributor of consumer products.[1]  (Complaint, at ¶ 12.)  Relevant here are Plaintiffs' copper-infused compression garments, which are marketed and sold under the COPPER FIT trademark and include the following sub-brands: Copper Fit Knee or Elbow Sleeves, Copper Fit Pro Knee or Elbow Sleeves, Copper Fit Back Pro, and Copper Fit Socks (hereinafter, collectively "Copper Fit Products").  (Id. ¶ 14.)

IDVC is the owner, and Ideavillage the exclusive licensee, of the following registered trademarks: 4,676,558 for "COPPER FIT" for goods in Class 25; 4,774,235 for

---

[1]    The facts cited herein are derived from the Complaint, the well-pleaded factual allegations of which are deemed admitted, see Fed. R. Civ. P. 8(b)(6), as well as from uncontroverted documentary evidence filed in support of the instant motion practice.

"COPPER FIT" for goods in Class 24; 5,162,178 for "COPPER FIT" for goods in Class 9; 5,788,312 for "COPPER FIT" for goods in Classes 10, 18, 20, and 25; 5,301,755 for "COPPER FIT" for goods in Class 25; 5,397,495 for COPPER*fit* for goods in Classes 9 and 10; 5,409,018 for COPPER*fit* for goods in Class 25; and 4,901,255 for "COPPER FIT PRO SERIES" (hereinafter, collectively "Copper Fit Marks"), as well as registered copyrights related to Copper Fit Products.  (Id. ¶¶ 20, 22.)  IDVC is also the owner, and Ideavillage the exclusive licensee, of U.S Copyright Registration VA 2-091-621, which covers the Copper Fit Back Belt Website (www.CopperFitBack.com), and VA 1-948-947, which covers the Copper Fit Back Pro Packaging (hereinafter, collectively "Copper Fit Works").  (Id. ¶ 23.)

Ideavillage promotes and sells its products through national, direct response television advertisements, at mass retail outlets, through catalog companies, online, through its own website and those of its retail customers, and through a network of international distributors. (Id. ¶ 12.)  The Copper Fit Marks are currently in use in commerce in connection with the Copper Fit Products.  (Id. ¶ 21.)

Defendant Liuzhou is a Chinese entity which owns and/or operates the websites copperfitonlineshop.com and eryon.life.  (Id. ¶ 8.)  Through these two websites, Defendants offer and sell products to consumers in the United States which Plaintiffs allege are counterfeits of products bearing the Copper Fit Marks (the "Counterfeit Products") and which infringe their trademark rights and copyrights.  (Id.)  On April 28, 2020, and May 4, 2020, Plaintiffs made test buys through Defendants' websites eryon.life and copperfitonlineshop.com, respectively.  (Id. ¶¶ 37, 38.)  Both purchases were received by Plaintiffs and included products Plaintiffs allege infringe the Copper Fit Marks.  (Id. ¶¶ 39, 40.)  The products purchased during the second test

buy were shipped after Ideavillage sent Defendants cease and desist letters on May 15, 2020, and May 18, 2020.  (Id. ¶¶ 43, 45.)

Plaintiffs filed their Complaint on June 30, 2020.  (Complaint.)  On July 8, 2020, the Court granted Plaintiffs' request for a Temporary Restraining Order ("TRO"), which froze Defendants' assets held by certain financial institutions, restrained the websites' service providers, and restrained Defendants from selling any products that infringed the Copper Fit Marks or were counterfeits of the Copper Fit Products.  (See July 8, 2020, docket entry text; docket entry no. 23.)  On July 20, 2020, Plaintiffs served Defendants with the summons, Complaint, TRO, and all papers filed in support of Plaintiffs' application (docket entry no. 26), and on August 5, 2020, the Court held a show cause hearing with respect to Plaintiffs' application for a Preliminary Injunction and subsequently entered a Preliminary Injunction Order prohibiting Defendants from infringing upon Plaintiffs' rights with regard to the Copper Fit Marks or Copper Fit Products.  (Docket entry nos. 32 and 33.)  The Preliminary Injunction Order also restrained certain third-party service providers and financial institutions from providing certain services to Defendants or taking certain actions with regard to Defendants' websites or financial accounts.  (Docket entry no. 32.)

On October 2, 2020, the Clerk of Court entered a Certificate of Default against Defendants.  (Docket entry no. 38.)  On October 16, 2020, the Court granted Plaintiffs permission to seek a default judgment.  (Docket entry no. 40.)  Plaintiffs served a copy of that order on Defendants on October 16, 2020.  (Docket entry no. 41.)  On December 22, 2020, Plaintiffs filed the instant motion for default judgment.  (Docket entry no. 42.)

<u>DISCUSSION</u>

In determining whether to grant a motion for default judgment, the Court first considers three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." <u>Santana v. Latino Express Restaurants, Inc.</u>, 198 F. Supp. 3d 285, 291 (S.D.N.Y 2016) (quotation omitted); <u>see also</u> <u>Guggenheim Cap., LLC v. Birnbaum</u>, 722 F.3d 444, 455 (2d Cir. 2013).

Here, all three factors weigh in favor of granting default judgment.  First, Defendants' failure to respond to Plaintiffs' Complaint, failure to respond to the order to show cause why a preliminary injunction should not issue (docket entry no. 23), failure to attend subsequent telephonic conferences (docket entry nos. 29, 33), and failure to respond to the default judgment motion practice are indicative of willful conduct.  <u>See</u> <u>Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.</u>, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (citation omitted) (holding that a party's non-appearance and failure to respond to a complaint or motion for default judgment indicates willful conduct).  Second, because Defendants have failed to appear or respond to this action, the Court is unaware of any meritorious defense that Defendants could present.  <u>See</u> <u>Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC</u>, No. 18-CV-12226, 2020 WL 70947, at *2 (S.D.N.Y. Jan. 3, 2020).  Third, Plaintiffs will be prejudiced if they are denied judgment by default, as Defendants have willfully failed to respond to the Complaint and the present motion.  <u>See</u> <u>id.</u>  Accordingly, default judgment is appropriate if "plaintiff[s] ha[ve] pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted." <u>Santana</u>, 198 F. Supp. 3d at 291.

<u>Trademark Counterfeiting, Infringement of Registered Trademarks, Federal Unfair Competition</u>

To prevail on Lanham Act claims, Plaintiffs must proffer ownership of a valid mark and "prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." <u>Starbucks Corp. v. Wolfe's Borough Coffee, Inc.</u>, 588 F.3d 97, 114 (2d Cir. 2009) (conducting a combined analysis for trademark infringement and unfair competition claims).  A certificate of registration with the United States Patent and Trademark Office is considered <u>prima facie</u> evidence of a trademark's validity.  <u>Lane Cap. Mgmt., Inc. v. Lane Capital Mgmt, Inc.</u>, 192 F.3d 337, 345 (2d Cir. 1999).  Here, Plaintiffs have established ownership of valid marks by proffer of certificates of registration for the Copper Fit Marks.  (Complaint, Ex. A.)

To assess the likelihood of confusion, courts in this District generally analyze the factors outlined in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961); <u>see, e.g.</u>, <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 799 F.2d 867, 871–72 (2d Cir. 1986) (analyzing the <u>Polaroid</u> factors).  However, in cases involving counterfeit items, a full <u>Polaroid</u> analysis is not necessary "because counterfeits, by their very nature cause confusion." <u>Gucci Am., Inc. v. Duty Free Apparel, Ltd.</u>, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).  The Lanham Act defines a counterfeit as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C.A. § 1127 (Westlaw Pub. L. through 117-36).  Here, the Court has reviewed Plaintiffs' marks in comparison to the allegedly counterfeit marks and finds that the two are substantially indistinguishable in font, design, and layout.  (<u>Compare</u> Complaint, Ex. A <u>with</u> <u>id.</u>, Exs. C, F, and G.)  Defendants' marks are therefore counterfeits of Plaintiffs' registered, valid marks.  Plaintiffs' test buys and subsequent receipt of goods bearing the Copper Fit Marks from Defendants' websites confirm that Defendants were

using the Copper Fit Marks in commerce.  (Complaint, at ¶¶ 37-40.)  Accordingly, Plaintiffs have established the elements of trademark counterfeiting, trademark infringement, and federal unfair competition and are entitled to default judgment upon those claims.

Cybersquatting

Plaintiffs assert a claim of cybersquatting arising from Defendants' domain name copperfitonlineship.com.  To succeed on a cybersquatting claim under 15 U.S.C. section 1125(d)(1)(A), a plaintiff must show that "(1) its trademark is either distinctive or famous, (2) the domain name is identical or confusingly similar to the trademark, and (3) the defendant acted with a bad-faith intent to profit from the trademark."  Salvatore Ferragamo S.p.A. v. Does 1-56, No. 18-CV-12069, 2020 WL 774237, at *3 (S.D.N.Y. Feb. 18, 2020); see also Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 496–99 (2d Cir. 2000).  Trademarks are divided into five categories: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; and 5) fanciful. Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997).  Marks that are categorized as arbitrary, fanciful, or suggestive are "deemed inherently distinctive and are entitled to protection."  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

Here, Plaintiffs' Copper Fit Marks are suggestive because the marks identify the copper material used in the products and the products' compression function, but do not directly describe what the product is, or what it is used for.  See, e.g., Playtex Prods., Inc. v. Georgia-Pac. Corp., 390 F.3d 158, 164 (2d Cir. 2004) (holding "Wet Ones" was a suggestive mark because, "without more, [the mark] does not itself conjure up the image of a towelette").  Accordingly, the Copper Fit Marks are inherently distinctive.

The Court further finds that Defendants' domain name "copperfitonlineshop.com" is confusingly similar to Plaintiffs' registered marks.  Defendants' domain name contains Plaintiffs' trademark, and the addition of "online" and "shop" do not indicate a separation from the mark.  Rather, including "online" and "shop" implicate the domain as an electronic avenue through which products bearing Plaintiffs' marks can be purchased.

The Court also concludes that the record demonstrates that Defendants acted in bad faith when they registered the domain name "copperfitonlineshop."  The Lanham Act contains a non-exclusive list of factors to consider in determining bad faith, one of which is usage of "the trademark . . . in the domain name."  15 U.S.C. § 1125(d)(1)(B) (Westlaw Pub. L. through 117-36).  Courts "are not limited to considering just the listed factors," but rather, the factors are merely "indicia that may be considered along with other facts."  Sporty's Farm L.L.C, 202 F.3d at 498 (internal quotation and citation omitted).  Here, the Court finds that Defendants acted in bad faith by including the registered mark in the domain name, using the website as an instrument to infringe on Plaintiffs' registered trademarks and copyrights, see discussion infra, and selling goods bearing the counterfeit marks in commerce.  Accordingly, Plaintiffs are entitled to default judgment on their cybersquatting claim.


Federal Copyright Infringement

To demonstrate federal copyright infringement, Plaintiffs must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

First, Plaintiffs have proffered documents demonstrating ownership of a valid copyright for their commercial, website, and packaging.  (Complaint, Ex. B).  See Yurman

Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001) (stating that registration in the U.S

Register of Copyrights creates a statutory presumption of a valid copyright.)

    Second, Plaintiffs allege that Defendant has copied their website and packaging.[2]

(Complaint, at ¶¶ 99, 100.)  To satisfy the second element of copyright infringement, "the

copyright owner must demonstrate that '(1) the defendant has actually copied the plaintiff's

work; and (2) the copying is illegal because a substantial similarity exists between the

defendant's work and the protectible elements of plaintiff's.'"  Yurman Design, Inc., 262 F.3d at

110 (quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999) (emphasis in original).)

Plaintiffs may show actual copying through direct or indirect evidence.  Hamil Am. Inc., 193

F.3d at 99.  Copying may be proven indirectly by showing the "defendants had access to the

copyrighted work and [that there are] similarities that are probative of copying between the

works."  Id.  A defendant had access if it "has had a 'reasonable opportunity to view' plaintiff's

work before creating his own."  Arica Inst., Inc. v. Palmer, 761 F. Supp. 1056, 1064 (S.D.N.Y.

1991) (quoting Gaste v. Kaiserman, 863 F.2d 1061, 1067 (2d Cir. 1988.  To meet the element of

substantial similarity, Plaintiffs must show that "an average lay observer would recognize the

alleged copy as having been appropriated from the copyrighted work."  Smith v. Weinstein, 578

F. Supp. 1297, 1302 (S.D.N.Y. 1984) (quotation omitted).

    Plaintiffs claim that Defendants have infringed Plaintiffs' copyright in their

website.  (Complaint, at ¶¶ 99, 100.)  Plaintiffs allege that Defendants had access and

opportunity to view Plaintiffs' website because the website marketed and sold goods to the

---

[2]   Plaintiffs also claim Defendants have infringed their copyrighted commercial.
(Complaint, at ¶ 35.)  However, Plaintiffs have not pleaded facts supported by evidence
sufficient to establish Defendants' liability with respect to this cause of action, as
Plaintiffs have proffered no evidence of a commercial used by Defendants that allegedly
copies original elements of Plaintiffs' commercial.

public.  (<u>Id.</u> ¶ 12.)  With regard to similarity, the Court has already determined that Defendants' mark is a counterfeit of Plaintiffs' Copper Fit Marks.  <u>See</u> discussion <u>supra</u>.  Both Plaintiffs' and Defendants' websites present the Copper Fit Mark on the top left of the page, followed by the slogan "High Quality Compression designed to provide everyday support and relief for lower back muscles," as well as the same picture of Brett Favre on the top left, followed by the price, all in the same font and color scheme.  (<u>Compare</u> Complaint, Ex. B <u>with</u> <u>id.</u>, Ex. C.)  Moreover, both websites have the same "Features and Benefits" section in the same location on the page, displaying the same message in the same font and format.  In the aggregate, the combination of these similarities between Defendants' website and the protectible elements of Plaintiffs' website is substantial and is sufficient to establish the second element of copyright infringement.

Plaintiffs also claim that Defendants have infringed their products packaging copyright.  (Complaint, at ¶¶ 99, 100.)  Defendants had access and opportunity to view Plaintiffs' Copper Fit packaging, as it was publicly available through the sale of Plaintiffs' products.  (<u>Id.</u> at ¶ 12.)  Moreover, the Court discerns little to no difference between Plaintiffs' protected packaging and Defendants' packaging, other than the differing sizes of the exemplar products and a small amount of excess plastic at the bottom of Defendants' package.  (<u>Compare</u> Complaint, Ex. B <u>with</u> <u>id.</u>, Ex. G.)  Accordingly, the Court finds that the average lay observer would recognize Defendants' packaging as having been appropriated from protected elements of Plaintiffs' packaging.  <u>See</u> <u>Smith</u>, 578 F. Supp. at 1302.  Defendants' packaging is therefore substantially similar to Plaintiffs' protected packaging and infringes Plaintiffs' copyright.

Permanent Injunction

           To obtain a permanent injunction, a plaintiff must succeed on the merits and demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  As explained above, Plaintiffs have pleaded sufficient facts to establish Defendants' liability with respect to five of their causes of action.

           In this Circuit, irreparable harm "exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark." Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985).  Here, given the likelihood of confusion between Plaintiffs' trademarks and Defendants' counterfeit marks, the impression given to customers who encounter Defendants' counterfeit marks is not under Plaintiffs' control.  Accordingly, Plaintiffs cannot control the reputation of their trademarks if Defendants are permitted to continue selling the counterfeit products, and irreparable harm exists as a result of that loss of control over the reputation and goodwill associated with Plaintiffs' trademarks.

           "A plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyrights."  Pearson Educ., Inc. v. Vergara, No. 09-CV-6832, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010) (internal modification and quotation omitted).  "A court may infer from a defendant's default that it is willing to, or may[,] continue its infringement."  Id.  Here, Defendants have defaulted, and the Court has received no indication that Defendants will cease the activities that are infringing on Plaintiffs' trademark

and copyright protections.  Therefore, the Court finds that Plaintiffs have no adequate remedy at law.

The balance of equities also favors Plaintiffs.  Plaintiffs' business, goodwill, and reputation are associated with the Copper Fit Marks and are harmed by the continued sale of counterfeit products.  By contrast, Defendants will suffer little harm if injunctive relief is granted, as the defaulting Defendants have not identified any hardships for the Court to consider and injunctive relief will only order them to do that which the Lanham Act requires.  Moreover, the public interest will be furthered by granting the requested injunctive relief, which will protect Plaintiffs' interest in their trademarks and protect consumers from being deceived by the counterfeit products and being defrauded by Defendants.  Accordingly, Plaintiffs are entitled to a permanent injunction prohibiting Defendants from unlawful counterfeiting of the Copper Fit Products, infringing Plaintiffs' Copper Fit Marks and Copper Fit Works, engaging in any further unfair competition with respect to the Copper Fit Products, and continuing to use the domain name copperfitonlineshop.com.

Damages

Plaintiffs request an award of $600,000.00 in statutory damages, jointly and severally against Defendants, and post-judgment interest pursuant to 15 U.S.C section 1117(c).[3] The Lanham Act provides that a plaintiff seeking damages for the use of a counterfeit mark may elect to recover statutory damages of between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or if

---

[3]     Plaintiffs have not been able to obtain any discovery of the scope of Defendants' sales, profits, or costs.  (Docket entry no. 44, at ¶¶ 25, 31.)

the infringement was willful, up to $2,000,000 per mark.  15 U.S.C.A. § 1117(c) (Westlaw Pub.

L. through 117-36).

Because the Lanham Act "does not explicitly provide guidelines for courts to use

in determining an appropriate award," see Louis Vuitton Malletier, S.A. v. LY USA, No. 06-CV-

13463, 2008 WL 5637161, at *1 (S.D.N.Y. Oct. 3, 2008) (internal quotation omitted), courts

"often have looked for guidance to the better developed case law under the Copyright Act, 17

U.S.C. § 504(c), which permits an award of statutory damages for willful copyright

infringement."  All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 622

(S.D.N.Y. 2011) (quotation omitted).  Applying such framework to cases arising under the

Lanham Act, courts have considered the following factors:

> "(1) the expenses saved and the profits reaped; (2) the revenues lost by the
> plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others
> besides the defendant; (5) whether the defendant's conduct is innocent or
> willful; (6) whether a defendant has cooperated in providing particular records
> from which to assess the value of the infringing material produced; and (7) the
> potential for discouraging the defendant."

Id. (quoting Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., No. 03-CV-2132, 2006 WL

728407, at *6 (S.D.N.Y. Mar. 21, 2006).)

In this case, the Court determines that the factors weigh in Plaintiffs' favor.  As to

factors one, two, and six, Defendants have not appeared in this litigation, and Defendants'

default has deprived Plaintiffs of the opportunity to engage in discovery regarding the profits

Defendants have made and the expenses Defendants have saved by selling counterfeit items and

the revenues Plaintiffs have lost as a result of those sales.  (See docket entry no. 44, at ¶¶ 24, 25,

31.)  As to factor three, "[c]ourts can infer from the well-known reputations of most or all of the

trademarks and the sea of advertising that presses them on the consciousness of the buying

public that they are indeed valuable," see Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 373

(S.D.N.Y. 2020) (internal quotation and citation omitted), and Plaintiffs have proffered

testimony that the "Copper Fit Products, Copper Fit Marks and Copper Fit Works, have acquired

a valuable reputation and goodwill among the public," see docket entry no. 20 at ¶ 17, and that

"[r]etailers, retail buyers, consumers and members of the public have become familiar with the

Copper Fit Products and associate them exclusively with Ideavillage."  (See id. ¶ 16.)  Thus, the

Court finds the trademarks here to be highly valuable.  As to factor four, the "goal of deterring

similar conduct by other enterprises requires a substantial award."  Louis Vuitton Malletier, 2008

WL 5637161, at *2.  As to factor five, in this Circuit, willfulness may be established by virtue of

Defendants' default.  See, e.g., Chloe v. Zarafshan, No. 06-CV-3140, 2009 WL 2956827, at *7

(S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an

innocent party would presumably have made an effort to defend itself.").  Accordingly, because

Defendants have defaulted, the Court finds that Defendants willfully engaged in counterfeiting

Plaintiffs' registered marks.  Finally, as to factor seven, Defendants' use of marks identical to

Plaintiffs' in connection with at least three infringing products and works on a substantially

similar website demonstrates that they are unlikely to be deterred by a small damage award.

   Hence, after careful consideration of the relevant factors, the Court finds that the

requested award of $600,000 in damages is warranted.  Comparable damages have been awarded

in cases in this District with similar facts.  See, e.g., Coach, Inc., 2012 WL 1071269, at *3-4

(awarding $200,000 per trademark infringement for goods sold online, accounting for both

compensatory and punitive damages).  Therefore, the Court hereby grants $600,000.00 in

statutory damages, jointly and severally against Defendants, plus post-judgment interest under

the statutory formula set forth in 28 U.S.C section 1961.

Transfer of Infringing Domain Name

          Plaintiffs request an order transferring Defendants' infringing domain name –

copperfitonlineshop.com – to IDVC.  "In any civil action involving the registration, trafficking,

or use of a domain name . . ., a court may order the forfeiture or cancellation of the domain name

or the transfer of the domain name to the owner of the mark."  15 U.S.C.A. § 1125(d)(1)(C).

Transfer of a domain name is particularly appropriate if Defendants have expressed a willingness

to continue to use the infringing domain name.  See Mintz v. Mktg. Cohorts, LLC, No. 18-CV-

4159, 2019 WL 3337896, at * 8 (E.D.N.Y. July 25, 2019); Prime Publishers, Inc. v. American-

Republican, Inc., 160 F. Supp. 2d 266, 281-82 (D. Conn. 2001) (granting request for transfer of a

domain name).  Because Defendants used Plaintiffs' protected mark in their domain name to

facilitate the sale of counterfeit goods, Defendants are likely to continue using the infringing

domain name absent injunctive relief.  See discussion supra.[4]  Accordingly, transfer of the

domain name copperfitonlineshop.com to IDVC is appropriate and is granted.


Post-Judgment Asset Restraint and Transfer

          Plaintiffs request an order restraining and transferring Defendants' assets that are

held by certain third parties, as set forth in the Preliminary Injunction Order, in satisfaction of the

judgment.  (Docket entry no. 43, at 16.)  Federal Rule of Civil Procedure 69 provides that

execution of money judgments must comport with the procedures of the forum state unless the

---

[4]     Notwithstanding Plaintiffs' evidence that Defendants' website is no longer accessible through copperfitonlineshop.com (Docket entry no. 44, at ¶ 30), the Court finds that, because Defendants have not appeared to answer the Complaint or oppose the instant motion, the likelihood is that they will continue to use the infringing domain name absent injunctive relief and the request for transfer is not moot.  Pearson Educ., Inc., 2010 WL 3744033, at *4 ("A court may infer from a defendant's default that it is willing to, or may[,] continue its infringement.").

governing federal statute provides otherwise. Fed. R. Civ. P. 69(a)(1). As the Lanham Act does not provide contrary instruction, the Court turns to N.Y. C.P.L.R. sections 5222 and 5225. N.Y. C.P.L.R. section 5222 permits an attorney for a judgment creditor to issue a restraining notice against a person in possession or custody of property in which the judgment debtor has an interest. N.Y. C.P.L.R. § 5222(a). Section 5225 permits a court to require a third party to pay a judgment creditor from funds belonging to a judgment debtor, but only "[u]pon a special proceeding commenced by the judgment creditor." N.Y. C.P.L.R. § 5225(b). The special proceeding requirement is satisfied where a judgment creditor brings a motion pursuant to Rule 69(a) against the third party in possession of the judgment debtor's assets. See, e.g., N. Mariana Islands v. Millard, 845 F. Supp. 2d 579, 581-82 (S.D.N.Y. 2012) (considering a turnover motion under Rule 69(a)); Mitchell v. Lyons Pro. Servs., Inc., 727 F. Supp. 2d 120, 125 (E.D.N.Y. 2010) (permitting claims raised against third-party garnishees to proceed by motion rather than in a special proceeding where personal jurisdiction over the garnishees was not an issue and they appeared to oppose the motion). As relevant here however, the special proceeding requirement imposed by N.Y. C.P.L.R section 5225 exists to ensure that third parties are given notice and an opportunity to be heard before a court orders turnover of a judgment debtor's assets. See Spin Master Ltd., 463 F. Supp. 3d at 384 (denying permanent injunctive relief to freeze and transfer defaulting defendant's assets in satisfaction of statutory damages because such an order would violate third-party rights to procedural relief under the C.P.L.R.). Here, the third parties alleged to hold Defendants' assets are not named in the Complaint, nor have Plaintiffs brought a motion against those third parties pursuant to N.Y. C.P.L.R. section 5225. Rule 69(a) directs that a procedure on execution of a money judgment "must accord with the procedure of the state where the court is located," but Plaintiffs ask this Court to exercise its authority over a broad range of

non-parties to this action who have not had notice and an opportunity to be heard on the issue of asset restraint and transfer.  See Spin Master Ltd., 463 F. Supp. 3d at 384; see also Allstar Mktg. Grp., LLC v. 123 Beads Store, No. 19-CV-3184, 2020 WL 5836423, at *8 (S.D.N.Y. Sept. 30, 2020) (denying turnover motion as to judgment debtor's property because proper notice was not given to the defendant and specific property as to which turnover was sought was not identified). Accordingly, Plaintiffs' request is denied, without prejudice to Plaintiffs' issuance of restraining notices pursuant to N.Y. C.P.L.R. 5222 and any later applications pursuant to N.Y. C.P.L.R. section 5225.

Continuation of Pre-Judgment Asset Restraint

Plaintiffs request a continuance of the pre-judgment asset restraint set forth in the Temporary Restraining Order and Preliminary Injunction.  Plaintiffs assert that the automatic 30-day stay of execution on judgments pursuant to Federal Rule of Civil Procedure 62(a) will provide Defendants an opportunity to dispose of, transfer, or hide their assets to avoid paying damages.  (Docket entry no. 43, at 24-25.)  Such relief is unnecessary, as Rule 62(a) provides that "execution upon a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."  Fed. R. Civ. P. 62(a) (emphasis added).  When this provision was added by amendment in 2018, the amendment recognized that one "reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated."  Fed. R. Civ. P. 62 advisory committee's note to 2018 amendment; see also Spin Master Ltd., 463 F. Supp. 3d at 384 (denying a temporary continuance of pre-judgment asset restraint and ordering that the 30-day stay shall not apply).  Accordingly, Plaintiffs are hereby relieved from the 30-day stay and may execute upon the judgment immediately.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for default judgment is granted in part, and denied in part.  Plaintiffs' request for a permanent injunction is granted to the following extent:[5]

1. Defendants, their respective officers, agents, servants, employees, successors and assigns and all persons acting in concert with or under the direction of Defendants (regardless of whether located in the United States or abroad), who receive actual notice of this Order are permanently enjoined and restrained from:

   A. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, or any other products bearing the Copper Fit Marks and/or Copper Fit Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the Copper Fit Marks and/or Copper Fit Works;

   B. directly or indirectly infringing in any manner Plaintiffs' Copper Fit Marks and Copper Fit Works;

   C. using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Copper Fit Marks and Copper Fit Works to identify any goods or service not authorized by Plaintiffs;

   D. using any of Plaintiffs' Copper Fit Marks and/or Copper Fit Works and/or any other marks that are confusingly similar to the Copper Fit Marks and/or any other

---

[5] For any terms not otherwise defined, the Court adopts the definitions set forth in docket entry no. 45.

artwork that is substantially similar to the Copper Fit Works, on or in connection
with copperfitonlineshop.com, eryon.life, or any website operated by Defendants
and/or Defendants' manufacture, importation, exportation, advertisement,
marketing, promotion, distribution, offering for sale, sale and/or otherwise dealing
in the Counterfeit Products;

E.   using any false designation of origin or false description, or engaging in any
action which is likely to cause confusion, cause mistake and/or deceive members
of the trade and/or the public as to the affiliation, connection or association of any
product manufactured, imported, exported, advertised, marketed, promoted,
distributed, displayed, offered for sale or sold by Defendants with Plaintiffs'
Copper Fit Products;

F.   secreting, concealing, destroying, altering, selling off, transferring or otherwise
disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files,
data, business records, documents or any other records or evidence relating to
Defendants' Websites or Defendants' Assets and the manufacture, importation,
exportation, advertising, marketing, promotion, distribution, display, offering for
sale and/or sale of Counterfeit Products;

G.   linking, transferring, selling and/or operating Defendants' Websites;

H.   utilizing copperfitonlineshop.com and registering, trafficking in or using any
additional domain names that use or incorporate the Copper Fit Marks, or any
colorable imitation thereof;

I.   effecting assignments or transfers, forming new entities or associations, or
creating and/or utilizing any other platform, or any other means of importation,

exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

J.    knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(A) through 1(I) above.

2.    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants must deliver up for destruction to Plaintiffs any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiffs' trademarks, copyrights or other rights in the Copper Fit Marks and Copper Fit Works, or bear any marks or artwork that are confusingly or substantially similar to the Copper Fit Marks and Copper Fit Works pursuant to 15 U.S.C. § 1118;

3.    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in order to give practical effect to the permanent injunction granted herein, Defendants are hereby ordered to transfer www.copperfitonlineshop.com to IDVC's control immediately;[6]

---

[6]    The Court notes that it has refrained from granting the permanent injunctive relief Plaintiffs have sought against third parties.  Under Fed. R. Civ. P. 65(d)(2), the Court is authorized to "enjoin 'only' the following who receive actual notice of the injunction: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concern or participation with anyone described in Rule 65(d)(2)(A) or (B)." Spin Master Ltd., 463 F. Supp. 3d at 377.  Plaintiffs have not proffered evidence demonstrating that the Third Party Service Providers and Financial Institutions fall into any of these categories.

4.  Any failure by Defendants to comply with the terms of this Order shall be deemed contempt of Court, subjecting Defendants to contempt remedies to be determined by the Court, including fines and seizure of property; and

The Fifty Thousand U.S. Dollar ($50,000.00) security bond that Plaintiffs submitted in connection with this action is hereby RELEASED to counsel for Plaintiffs, Epstein Drangel, LLP, 60 East 42nd Street, Suite 2520, New York, NY 10165.  This Court shall retain jurisdiction over this matter and the parties in order to construe and enforce this Order.

Plaintiffs' request for statutory damages is granted in the amount of $600,000. Post-judgment interest shall accrue at the legal rate from the date of the judgment pursuant to 28 U.S.C section 1961.  Plaintiffs' request for an order restricting and transferring Defendants' assets held by third parties is denied without prejudice to use of asset restraint and judgment execution measures in compliance with the applicable state procedures.   Plaintiffs' requests for injunctions restraining third parties from providing services to Defendants are denied.  Plaintiffs are relieved from the 30-day stay pursuant to Federal Rule of Civil Procedure 62(a).

This Memorandum Opinion and Order resolves docket entry no. 42.

The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: New York, New York
      August 16, 2021

      __/s/ Laura Taylor Swain__
      LAURA TAYLOR SWAIN
      Chief United States District Judge